THE AMERICAN EXPRESS COMPANY, Appellant, *v.* JOSHUA G. PINCKNEY, Appellee.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

The plea of the general issue is a waiver of a demurrer.

After a decision overruling a demurrer to a count of a declaration, the court need not instruct the jury to disregard the count.

Such a motion is in the nature of a motion in arrest, and is not proper; nor is a motion in arrest for any exception, that might have been taken on arguing a demurrer.

An averment of an employment to collect a draft, for a reward to be paid, with an acceptance of the duty, creates an obligation, the breach of which, if properly set out, will sustain an action. And it is only necessary to state so much of the contract, the breach of which is complained of.

Such a contract need not be literally, but substantially stated.

Where a printed form is used, to be filled by writing, the written part will control in construing the contract.

THIS action was case, brought to the December term, A. D. 1861, of the Superior Court of Chicago, by Joshua G. Pinckney, against the American Express Company.

The declaration contains three counts.

The first count alleges that the plaintiff, at Dixon, Illinois, at the time of committing the grievances, was the owner of a draft, which is in the words and figures following, to wit:

$1000. Dixon, June 8th, 1861.

Sixty days after date, pay to the order of Ells & Coleman, one thousand dollars, value received, and charge to account of Messrs. Fay & Co., Chicago, Illinois.

S. B. PARKHURST.

To Messrs. FAY & Co., Chicago, Illinois.

Which draft was assigned by Ells & Coleman to plaintiff, by indorsement on the back thereof, as follows, to wit: " Pay J. G. Pinckney, or order. Ells & Coleman." And which draft was accepted on the face thereof by the firm of Fay & Co., composed of Albert R. Fay and Samuel D. Fay, doing business and having an office in Chicago. That defendant was engaged in the business of an express company, and the collection of drafts. That on the 8th day of August, 1861, at

Dixon, the plaintiff had retained and employed the said defendant to collect the said draft for him, for a reasonable commission and reward to the defendant, in that behalf to be paid, which retainer and employment defendant then accepted. That after such retainer and employment, and before committing the grievances, and in pursuance of such retainer and employment, plaintiff did, on said 8th day of August, deliver to, and said defendant did accept from, the plaintiff, the said draft, indorsed and accepted as aforesaid, for collection of the same by said defendant, to wit, at Dixon aforesaid; and thereupon it became and was the duty of defendant, by reason of said retainer and employment as aforesaid, to use all reasonable care and diligence that said draft, so indorsed and accepted as aforesaid, should be presented on the day the same became due, according to the tenor and effect thereof.

Yet the defendant, not regarding his duty, but contriving, etc., did not use reasonable care and diligence that the draft should be presented on the day it came due, according to its tenor and effect, and the acceptance thereof, to said Fay & Co., at their office in Chicago, for payment thereof in par funds, according to such tenor and effect, and said indorsements and acceptance, but wholly neglected and refused so to do, and so carelessly and negligently behaved in the premises, that by and through the same carelessness and negligence of said defendant, said draft was not presented to said Fay & Co., at their office in Chicago, for payment thereof in par funds, until more than six days after the same became due. By reason whereof, and of the failure of said Fay & Co., and of said drawer, said S. B. Parkhurst, and of said indorsers, said Ells & Coleman, to pay the same, the plaintiff hath lost the said sum of money in said draft mentioned, to wit, the sum of one thousand dollars.

The second count sets out the same draft and indorsement like the first count, and alleges that Fay & Co. accepted it as follows: "Accepted June 15, 1861, payable at our office in par funds." That plaintiff, on the 8th day of August, 1861, at Dixon, had retained and employed defendant to take said draft, so indorsed and accepted, from Dixon to Chicago, and

26

present the said draft for payment in par funds, at the said office of Fay & Co., in Chicago, on the day when said draft became due, according to the tenor and effect of said draft and of said acceptance, to wit, on the 10th day of August, 1861, and to receive payment thereof in par funds, if the said Fay & Co., or any other person, should so pay said draft, upon such presentment thereof, and carry from said city of Chicago to Dixon, and deliver to plaintiff said par funds; and in the event such draft was not paid upon such presentment, to return the same to plaintiff at Dixon, within a reasonable time thereafter, for a reasonable commission and reward, to be paid by plaintiff to defendant, upon receipt of the said proceeds, or of said draft, if payment thereof was refused, which retainer and employment the defendant then accepted. That on said 8th day of August the plaintiff delivered the said draft to defendant, in pursuance of such retainer. Avers the duties and negligence the same as in the first count, and that Fay & Co. became insolvent, and the loss of the said sum in the draft mentioned.

The third and last count sets out the draft, indorsement and acceptance, the same as second count; avers that on the 8th of August, 1861, at Dixon, the plaintiff retained and employed defendant to collect said draft for a reasonable commission and reward, which retainer the defendant accepted; avers that plaintiff delivered the draft to defendant, pursuant to such retainer, and that it was the duty of defendant to use all reasonable and proper care and diligence to collect the same; sets out the breach of such duty, and that plaintiff lost the sum of money in said draft mentioned, but does not aver the insolvency of Fay & Co.

The defendant filed a demurrer to the first count of plaintiff's declaration, and plaintiff joined in demurrer; and the general issue to other counts, to which plaintiff added the similiter.

Afterwards, the demurrer was heard, and overruled.

At the request of plaintiff's counsel, the court instructed the jury as follows:

If the jury find, from the evidence, that on the 8th day of

August, A. D. 1861, the plaintiff was the owner of the draft in question, made, indorsed and accepted as alleged in plaintiff's declaration, and on the same day plaintiff employed and retained defendant to collect the same, and that on the same day defendant accepted such retainer and employment, and received said draft from plaintiff in pursuance of such retainer and employment; that thereupon it became and was the duty of the defendant to use all reasonable care and diligence that said draft should be presented on the day the same became due, according to the tenor and effect of the said acceptance thereof.

If the jury further find, from the evidence, that defendant did not, nor would, use all reasonable care and diligence that said draft should be presented for payment as aforesaid, but wholly neglected so to do, the jury will find for plaintiff, and assess his damages at such sum as they may find, from the evidence, that plaintiff has lost by reason of such failure or neglect to use all reasonable care and diligence that said draft should be presented for payment thereof as aforesaid.

If the jury find, from the evidence, that on the 8th day of August, A. D. 1861, plaintiff was the owner of the draft in question, made and indorsed and accepted as alleged in plaintiff's declaration, and on the same day that plaintiff's agent employed defendant to collect said draft for a reasonable commission and reward, to be paid by plaintiff to defendant upon such collection on the return of said draft, defendant having failed to collect the same, and that thereupon plaintiff on that day delivered said draft to defendant or his agent for collection, in pursuance of said retainer and employment; and if they further find, from the evidence, that the defendant negligently failed to present said draft, or to cause the same to be presented, to the accepters, for payment, according to the said acceptance, on the 10th day of August, A. D. 1861; that said draft would have been paid if it had been so presented, and that before the commencement of this suit the drawer and indorser of said draft had refused to pay the same, and that since said 10th day of August, and before the commencement of this suit, said draft was presented to said accepters for pay-

ment thereof in par funds, and that such payment thereof was then and there refused by said accepters, and that on the same day of said presentment and refusal of payment, if the jury may find there was such presentment and refusal, said accepters were insolvent, the jury will find for plaintiff, and assess his damages at such sum as they believe, from the evidence, the plaintiff has lost by reason of the failure of defendant to present said draft on the day it was due.

If the jury find, from the evidence, that on the 8th day of August, 1861, the plaintiff was then the owner of the draft in evidence, indorsed and accepted as alleged in the plaintiff's declaration, and retained and employed defendant to collect the same, and that defendant accepted such retainer and employment, and on the same day, in pursuance of such retainer and employment, received said draft so rendered and accepted, for collection, and that the said defendant thereafter negligently failed to present, or cause to be presented, the said draft for payment on the 10th day of August, A. D. 1861, at said Fay & Co.'s office; and that defendants so carelessly and negligently behaved in the performance of their duty under such retainer and employment, that plaintiff has lost the sum of money in said draft specified, they will find for the plaintiff, and assess the damages at such loss as they may believe, from the evidence, he has sustained by such carelessness and negligence; and the jury are further instructed, that possession of the draft on the 8th day of August, 1861, is *prima facie* evidence of ownership on that day by plaintiff, and that delivery to the agent at Dixon, if they find, from the evidence, he was the agent, is the same as delivery to defendant.

That if the jury find, from the evidence, that plaintiff owned the draft in question, indorsed and accepted as alleged in the declaration of plaintiff, and on the same day retained and employed defendant to collect the same and delivered the said draft to defendant, and defendant thereupon accepted such retainer and employment, that thereupon it became the duty of defendant to present the said draft for payment on the day it was due. And that if they further find, from

the evidence, that defendant did not present said draft for payment on said 10th day of August, and if said draft had been presented on that day, it would have been paid ; and that before the defendant returned the draft to the plaintiff, the accepters have assigned and dispossessed themselves of all their property, partnership and individual ; and that the drawer and indorser, since the failure to present, (if such the jury find there was) have refused to pay said draft, and that the refusal of drawer and indorser was before the commencement of this suit, they will find for plaintiff, and assess his damages at such sum as they believe, from the evidence, was lost by reason of defendant's neglect.

To the giving of each of which instructions, the defendant excepted.

Whereupon the defendant's counsel asked the court, on behalf of defendant, to instruct the jury as follows :

That the plaintiff claims to recover in this case for a mere non-feasance : that in order to recover for a non-feasance, it is necessary for plaintiff to show a good or sufficient consideration for the undertaking or duty as to which the omission occurred.

That if the jury believe, from the evidence, that the draft in question was delivered by plaintiff to defendant at Dixon, and the defendant took and received therefor a receipt in all respects like that given in evidence, then such receipt constituted the contract between the parties, and the same is variant from that alleged in the plaintiff's declaration, and the jury will find for the defendant.

That the jury are instructed to disregard the first count of plaintiff's declaration, as faulty.

If the jury believe, from the evidence, that the draft in question was delivered by the plaintiff to the defendant, under a receipt given by the defendant to him for the same, and that the receipt given in evidence is a copy thereof, then such receipt constitutes the contract between the parties, and none can be implied ; and the said contract did not require the defendant to present the draft for payment, or to give notice of non-payment, but only to forward the same to Chicago.

That under the receipt given in evidence, the defendant undertook only in the character of forwarder, and cannot be liable except in that character.

That if the draft in question was delivered under the receipt given in evidence, then that constitutes the contract between the parties; and there is a variance between the proof and declaration, and the jury will find for the defendant.

The jury are instructed, that the writing given by the agent of the defendant to the plaintiff, at the time the draft in question was delivered to him, is not only a receipt for the draft, but also a contract between the said plaintiff and the defendant, and, as such contract, it controls the rights and liabilities of the parties to this action; and the jury are further instructed, that under said contract the liability assumed by the defendant, in receiving the said draft, was only that of a forwarder of the draft. And if the jury believe, from the evidence, that the draft was safely and properly forwarded and conveyed by the defendant to its destination, as stated in the contract, then the duty of the defendant under the same was fully performed, and the plaintiff cannot recover in this action.

But the court refused to give any or either of said instructions so asked, and to such refusal the defendant excepted.

Whereupon the defendant filed his motion to set aside the said verdict, and for a new trial, on the following grounds:

The court gave erroneous instructions on behalf of plaintiff.

The court refused proper instructions asked on behalf of defendant, and made improper modifications to instructions given on behalf of defendant.

The verdict is contrary to the law and the evidence.

The plaintiff did not prove a cause of action.

But which motion the court overruled, and the defendant excepted.

The appellant assigns the following for error:

The court erred in overruling the appellant's demurrer to the first count of appellee's declaration.

The court erred in giving the several instructions aforesaid on behalf of appellee.

The court erred in refusing to give the several instructions asked on behalf of appellant.

The court erred in refusing to set aside the verdict, and grant a new trial.

The court erred in giving judgment against appellant, and in favor of appellee.

Scates, McAllister & Jewett, for Appellant.

The appellant, defendant below, filed a demurrer to the first count of plaintiff's declaration, which the court overruled ; and upon the trial, applied to the court to instruct the jury to disregard said count as faulty ; but which the court refused to do.

The provision of the 25th section of the practice act, (see R. S. 1845, page 417) is thus : " If one or more counts be faulty, the defendant may apply to the court to instruct the jury to disregard such faulty counts." `

This section referred to, changes the common law, which required a judgment to be arrested, in case there was one bad count in the declaration, and substitutes the mode of instructing the jury to disregard the faulty count.

Now we submit that the first count of the declaration in this cause is bad in substance, because without anything being averred from which the duty could arise in defendant to present the draft in question at any particular place, for payment in any particular kind of. funds, the plaintiff avers as a breach of duty, and the gravamen of the action, that defendant did not present it at the office of Fay & Co., in Chicago, for payment in par funds, until more than six days after it became due ; which averment contains an implication that it was presented elsewhere, and for payment in other funds, the day it became due.

Besides, there is no averment that Fay & Co., the accepters, were insolvent.

This action was brought for a breach of duty, arising out of contract ; and in all such cases, the law requires the contract itself to be set out and proved, with the same accuracy and

certainty as if the suit had been founded on the contract directly.

"In an action on the case, founded on an express or implied contract, as against an attorney, agent, carrier, inn-keeper, or other bailee, for negligence, etc., the declaration must correctly state the contract, or the particular duty or consideration from which the liability results, and in which it is founded; and a variance in the description of a contract, though in an action *ex delicto*, may be as fatal as in an action in form *ex contractu*."

In all the counts of the declaration, the contract of the defendant is averred to be a mere undertaking to collect the draft, and which the plaintiff sought to prove by showing circumstances and conversations, and without establishing the actual written contract under which the draft was delivered and received. The defendant proved that contract, and when proved, it should have been regarded by the court as fixing the rights of the parties, and merging all prior or cotemporaneous conversations. 1 Greenl. Ev., secs. 275, 276; 1 John's Rep. 414; *La Farge* v. *Richet*, 5 Wend. 187; *Creery* v. *Holly*, 14 Wend. 26; 6 Met. 353; *Renard* v. *Sampson*, 2 Kernan, 561.

By the contract between the parties, the defendants limited their liability, in respect to the draft in question, to that of mere forwarders to Chicago. *Illinois Central R. R. Co.* v. *Morrison*, 19 Ill. 136; *Hersfield et al.* v. *Adams Express Co.*, 19 Barb. 577.

There is no ambiguity in this contract. The first part of it is merely descriptive of the thing received. Then follows the undertaking of the defendant in the most express and unambiguous terms, thus: "which we undertake to forward to Chicago, Illinois, only perils of navigation excepted. And it is hereby expressly agreed, that the said American Express Company are not to be held liable for any loss or damage, except as forwarders only."

We can conceive of no form of language more explicit, or free from ambiguity, in which to define the character of an undertaking, than that above quoted—"which we undertake

to forward"—"are not to be held liable for any loss or damage, except as forwarders only."

Now a forwarder is a character of person well known in law, and is wholly different from that of an attorney or collecting agent. The liability of a forwarder is one thing; that of a collecting agent another and different. See Angel on Law of Carriers, sec. 75.

If the defendant merely undertook in the character of forwarder, then his undertaking should have been so described in the declaration; and not having been so charged, the court erred in refusing the fourth, sixth, seventh and eighth instructions asked on behalf of defendant below. *Ireland* v. *Johnson et al.*, 26 E. C. L. R. 341; 1 Chit. Pl. 384.

But by refusing the sixth, seventh and ninth instructions asked on behalf of defendant, the Superior Court ignored the contract altogether. The importance of upholding the superior and controlling obligations of written contracts, is far too great to justify the court in a departure in this instance, for the sake of meeting the supposed hardships of the case. 25 Ill. 466.

BARKER & TULEY, for Appellee.

We contend that, although the first count might be obnoxious to a special demurrer, it was not so faulty as to require the court to exclude it from the jury.

An averment (as in this) that plaintiff had retained, is sufficient, if followed by averment (as in this count) that the draft was received in pursuance of such retainer and employment. A duty arose to deal with draft in pursuance of such previous retainer, and there is an implied promise to perform that duty. *Streeter* v. *Horlock*, 1 Bingham, 34, directly in point.

We complain of the breach of duty, arising from the contract to collect.

No more of contract to be stated than that which was broken. Sufficient to state so much of it as constitutes the contract, the breach of which is complained of, and which prescribes the duty to be performed. 1 Saund. Pl. & Ev.

200, and cases cited; 8 East, 7; 2 Brod. & B. 359, (6 E. C. L. 182); 4 B. & Ad. 449; 24 E. C. L. 99.

If the contract shows a duty and the breach of it, we are entitled to at least nominal damages; and the count would not be obnoxious to a general demurrer.

The appellant contends "that the first count of the declaration in this cause is bad in substance, because, without anything being averred from which the duty could arise in defendant to present the draft in question at any particular place, for payment in any particular kind of funds, the plaintiff avers, as a breach of duty, and the gravamen of the action, that defendant did not present it at the office of Fay & Co., in Chicago, for payment in par funds, until more than six days after it became due; which averment contains an implication that it was presented elsewhere, and for payment in other funds, the day it became due."

The best answer to that, is to give the allegation of the count, which the abstract does not. It is as follows: "And thereupon it became and was the duty of the said defendant, by reason of said retainer and employment, as aforesaid, to use all reasonable care and diligence that the said draft, so indorsed and accepted, as aforesaid, should be presented on the day the same became due, according to the tenor and effect of said draft, and said acceptance thereof, to the said Fay & Co., at their office in the said city of Chicago, for payment thereof in par funds, according to the tenor and effect of said draft, said indorsement, and said acceptance."

"Yet the defendant, not regarding his said duty, but contriving, etc., did not use reasonable care and diligence that the draft should be presented on the day it became due, according to its tenor and effect, and the acceptance thereof, to said Fay & Co., at their office in Chicago, for payment thereof in par funds, according to such tenor and effect, and said indorsements and acceptance, but wholly neglected," etc.

Does not the duty and the breach of it sufficiently appear, at least so as to be good as against a motion to arrest the judgment? If so, it is sufficient upon the motion in this case. It is not "substantially defective."

The record shows a general demurrer to the first count of narr., and a plea of general issue to all the counts.

Inasmuch as the defendant below did not stand by his demurrer, but plead to all the counts, he waives the right to assign the decision overruling demurrer as error.

He thereby admits the sufficiency of the first count (4 Scam. 12,) and inasmuch as " this section referred to (25th sec. practice act,) changes the common law, which required a judgment to be arrested in case there was one bad count in the declaration, and substitutes the mode of instructing the jury to disregard the faulty count," we contend, " that after judgment on demurrer, there can be no motion in arrest of judgment, (2 Tidd's Prac. 918) ; so, after judgment on demurrer to first count, and pleading over to it, the party cannot ask the court to instruct the jury to disregard it as faulty."

An instruction of this kind " is in nature of a motion in arrest of judgment, striking at the sufficiency of the alleged cause of action, and may perhaps be sanctioned in practice by our statute, chap. 23, sec. 25." *Frink* v. *Schroyer*, 18 Ill. 419.

The second count is very full, and sets out the contract with great accuracy and certainty. We were not bound to set out that the express company attempted to limit their liability as forwarders. In an action against a carrier, it was held unnecessary to state in the declaration that the carrier limited his responsibility to five pounds. *Clarke* v. *Gray*, 6 East, 564.

As to the second branch of this case, it appears that the son of plaintiff below went to the agent at Dixon, and asked, " what he charged for taking draft to Chicago and collecting it ?" He said, " if collected, the charge would be $2 or $3 ; if not, about as small packages," etc. " I went back and got the draft and took it to Snyder, and he gave me a receipt for it."

The draft was put into the envelope, and indorsed " $1,000 —for collection," in presence of young Pinckney. The entry made by express agent on books of company was, " 1 collection $1,000, Pinckney, Fay & Co., Chi.—Pay on delivery."

The receipt is not the original. Agent at Dixon says he

gave this kind of receipt because he had no other kind in the office at that time.

It was evident that the parties understood this receipt to be only a memorandum of the fact of the draft being received by the express company.

This package receipt, under the circumstances, is without sense, unless it is construed to mean that the limiting of the defendant's (below) liability as a forwarder, was only intended to apply to the carriage of the draft and its proceeds if collected. It is simply saying, "That, in so far as the forwarding (carriage) of draft is concerned, I limit my liability to that of a forwarder."

The court will not construe this receipt so as to defeat the evident intention of the parties, that is, that the defendant (below) should undertake the collection of the draft; and the court will be loth to put a construction on it which will save him harmless from such gross negligence.

Where (as in this) the printed and written matter of receipt contradict or are repugnant, preference is given to the written. 2 Parsons, p. 28.

In *Renard* v. *Sampson*, 2 Kernan Rep., p. 561, cited by the other side, Justice Denio says :

"There is a class of cases where a subsequent written agreement may co-exist with a prior verbal one, relating to the same subject-matter. This is the rule where the latter agreement is in the execution of some distinct and separable provision of the earlier one, and also where though made at different times, they are both intended to take effect at the same instant and to constitute different parts of the same arrangement," and cites an analogous case to this of *McCulloch* v. *Girard*, 4 Wash. C. C. R. 289, and *Mowatt* v. *Lord Londesborough*, 3 Ellis & B. 307.

Where the agreement between the parties is one and entire, and only a part of this is reduced to writing, the residue may be proved by extrinsic evidence. 2 Parsons on Contracts, p. 63, and note *y ; Knapp* v. *Harden*, 6 Car. & Payne, 745 ; *Deshon* v. *Merchants' Ins. Co.*, 11 Metc. 199 ; 16 Penn. St. R. 43.

The receipt and writing on back of envelope should be both taken together, as they were made cotemporaneously, and refer to the same subject-matter; and one may be explained, enlarged, or controlled by the other. Addison on Contracts, p. 842, and cases cited. The entry in express company's books was evidence of what the contract was.

The counsel for appellant say, that a forwarder is wholly different from a collecting agent, but when a forwarder also undertakes to collect, in addition to his duties as forwarder, he should be held liable for negligence in the collection.

BREESE, J. This was an action on the case for negligence, and a verdict for the plaintiff. The declaration contains three counts, and the questions presented for our decision are, as to the sufficiency of the first count, and whether the evidence on the trial was sufficient to support the action, with a further question arising upon the instructions given for the plaintiff, and on those asked by the defendant and refused.

The defendant put in a general demurrer to the first count, to which there was a joinder, and at the same time pleaded to all the counts, the general issue.

On the principles of correct pleading, the plea of the general issue is a waiver of a demurrer, and might have been so regarded by the court. *Cobb* v. *Ingalls*, Breese, 2nd ed., 233; *Beer* v. *Philips*, ib. 44; *Buckmaster* v. *Grundy*, 1 Scam. 382. It was not, however, so regarded, but a decision was had, overruling the demurrer. On the trial, a motion was made by the defendant to instruct the jury to disregard that count as faulty, which the court refused.

It is now assigned for error, the overruling the demurrer, and refusing to instruct the jury to disregard the first count.

After the decision upon the demurrer, adjudging the count to be good, it could hardly be expected the court would stultify itself by giving an instruction to the jury to disregard that count. The law of the court was settled by the judgment on the demurrer, and the defendant could not ask this instruction of the court.

It is a settled principle, that after a judgment on demurrer,

there can be no motion in arrest of judgment for any exception that might have been taken, on arguing the demurrer. 2 Tidd's Practice, 917. A motion to instruct the jury as proposed, is in the nature of a motion in arrest of judgment, striking at the sufficiency of the alleged cause of action, and therefore such motion could not be allowed. *Frink* v. *Schroyer*, 18 Ill. 419. If the defendant deemed his demurrer well taken, he should have abided by it, and not tendered an issue on the facts. By abandoning the demurrer, and pleading to the whole declaration, he admitted its sufficiency, (*Russell* v. *Whiteside*, 4 Scam. 8), and cannot now assign the decision upon it as error.

But is the first count defective? We have examined it with great care, and are of opinion that it is good in form and substance. After stating the plaintiff's ownership of a certain money draft, accepted by Fay & Co., of Chicago, and payable at their office in that city, the count avers that on the eighth day of August, 1861, at, etc., he had retained and employed the defendant to collect this draft for him, for a reasonable commission and reward to be paid him, which retainer and employment the defendant then accepted—it is then alleged, that defendant accepted the draft for collection, on this retainer, and then avers:

"And thereupon it became and was the duty of the said defendant, by reason of said retainer and employment, as aforesaid, to use all reasonable care and diligence that the said draft, so indorsed and accepted, as aforesaid, should be presented on the day the same became due, according to the tenor and effect of said draft, and said acceptance thereof, to the said Fay & Co., at their office in the said city of Chicago, for payment thereof in par funds, according to the tenor and effect of said draft, said indorsements, and said acceptance."

"Yet the defendant, not regarding his said duty, but contriving, etc., did not use reasonable care and diligence that the draft should be presented on the day it became due, according to its tenor and effect and the acceptance thereof, to said Fay & Co., at their office in Chicago, for payment thereof in par funds, according to such tenor and effect, and said indorsements and acceptance, but wholly neglected," etc.

We can discover no substantial defect, either in the aver-ment of the duty, or in the breach of the duty. A motion in arrest of judgment could not prevail against such averments as are here found. The count alleges a contract to be per-formed on a sufficient consideration, and a duty arising there-upon, and a breach of that duty, which is sufficient to warrant a verdict for damages, nominal at least.

The averment that the plaintiff had retained and employed the defendant to collect the draft, for a commission and reward to be paid to him, followed by the averment of his accept-ance of the draft for the purposes of collection, in pursuance of such retainer and employment, is a sufficient statement of the contract, the breach of which is the subject-matter of the complaint. By the retainer and acceptance of the draft, a duty arose to deal with it according to the contract, and the law will imply a promise to perform the duty, and give an action for non-performance.

In the case of *Streeter* v. *Horlock*, 8 Eng. C. L. Rep. 390, it was said that whenever an order is given, previously to the delivery of goods, to a carrier or other bailee, to deal with them, when delivered, in a particular manner, to which he as-sents, and afterwards the goods are delivered to him according-ly, a duty arises on his part, upon receipt by him of the goods, to deal with them according to the order previously given and assented to ; and the law infers an implied promise by him to perform such duty. Other cases of a like nature might be re-ferred to, all going to show, where a duty is created by con-tract, an action will lie for its breach, and in pleading, it is sufficient to state only so much of the contract the breach of which is complained of. 1 Saund. on Pl. and Ev. 200.

The objection made by the appellant, therefore, that this count is bad, because nothing is averred in it from which the duty could arise on the part of the defendant to present the draft at any particular place for payment in any particular kind of funds, is not, we think, well taken. The averment of the retainer and employment, on a consideration and reward to be paid, and the acceptance of the draft for the purpose of collection, created the duty, and bound the party to present it

at the place indicated, in proper time, and to receive the kind of funds in which it was made payable, and this, too, if the undertaking was gratuitous. *Coggs* v. *Bernard*, 2 Raym. 919. The duty was thus created, and to this extent.

It is further urged by the appellant, that inasmuch as this action is brought for a breach of duty, arising out of contract, the law requires the contract itself to be set out and proved with the same accuracy and certainty as if the suit had been founded on the contract directly. The law means simply, that the contract, out of which the duty arose, must be stated correctly in substance—not literally. Any essential variance would be as fatal as in a declaration on the contract itself—as fatal in an action *ex delicto*, as in an action in form *ex contractu*. 1 Ch. Pl., p. 384. We have seen in what terms the contract is stated in the first count. The other counts are quite as full and particular as the first, setting out the retainer and employment—the acceptance of the draft for collection for a certain compensation and reward, and the failure to present the draft for payment on the day it fell due, and the consequent loss of the proceeds by the insolvency of the drawees and accepters.

Now, what was the testimony in regard to the contract? Does it show a contract essentially different from the one set out in the declaration? Has a variance been shown?

The delivery of the draft to the agent of the express company, was made by Eugene Pinckney, the son of the plaintiff, who states that he asked the agent what he charged for taking a draft to Chicago, and collecting it. The reply was, if collected, the charge would be two or three dollars; if not, about as small packages. He returned, got the draft and took it to the agent, who gave him a receipt for it. The draft was put in an envelope and indorsed, "$1000—for collection," in presence of the witness. The book of the company was produced on the trial, and this entry was found in it, made by the agent: "1 coll $1000. Pinckney, Fay & Co., Chi. P. O. R." The letters indicating, as admitted, "Pay on return," and the word "coll," collection. The envelope in which the draft was placed contained this indorsement on it, proved to have been made by the agent of the company:

### AMERICAN EXPRESS COMPANY.

Money package, forwarded by American Express Co. From Chicago, Ill. Livingston, Fargo & Co., Proprietors, Buffalo, No. 9 and 11 West Seneca street.

$1,000. For collection. From J. G. Pinckney, Dixon, Ill. August 8, 1861. Fay & Co., Chicago, Ill. Return proceeds on the inclosed with this envelope without delay, well sealed with wax. In the absence of notary, and at offices where notary cannot be found, agent will act as such, and in cases of non-payment, give notice to indorsers by mail, keeping a copy of the same. N. B.— Agents must observe the above instructions strictly in every instance. Due 14—17.

#### REMARKS.

"Cannot collect; have held on promises that have turned out lies."

The indorsement of date when due, "14—17," and the "remarks," the agent stated, were not in his handwriting.

There was also produced on the trial, a paper, which the agent stated was a copy of the receipt he had given for the draft—the original having been destroyed. Omitting the printed advertisement on the margin, as having no bearing on the case, the paper was as follows :

### AMERICAN EXPRESS COMPANY,

DIXON, August 8th, 1861.

Received of J. G. Pinckney, one dft. for collection, said to contain ——, drawn by S. B. Parkhurst on Fay & Co., valued at one thousand dollars, and marked Fay & Co., Chicago, Ill., which we undertake to forward to Chicago, Ill., only perils of navigation excepted. And it is hereby expressly agreed, that said American Express Co. are not to be held liable for any loss or damage, except as forwarders only; nor for any loss or damage of any box, package or thing for over $150, unless the just and true value thereof is herein stated; nor for any loss or damage by fire; nor upon any property or thing unless properly packed and secured for transportation ; nor upon fragile fabrics unless so marked upon the packages containing the same; nor upon any fabrics consisting of or contained in glass.

For the proprietors,

P. O. R.                          H. C. SNYDER, *Agent.*

This receipt, except the written portions of it, is a printed package receipt, and was used because the agent had no blank collection receipts in the office. It is all printed, except the place and date, the name " J. G. Pinckney," and the words, " one dft. for collection, drawn by S. B. Parkhurst on Fay & Co.—one thousand—Fay & Co., Chicago, Ill.—Chicago, Ill.— H. C. Snyder—P. O. R." As applied to the carrying and collection of a money draft, the printed portion is mere non

27

sense, unless it be construed to mean that the limit of
the liability as forwarder was only designed to apply to
the carriage of the draft, and its proceeds when collected.
This form was used by the agent by accident, with no de-
sign, as is very evident, of limiting the responsibility of the
company to the mere forwarding of the draft, as in the case
of a package of goods.   It is distinctly agreed in writing,
that the company should collect the draft—it was received for
that purpose.   The principle applicable in all such cases, is,
that a writing must be construed according to the clear intent
of the parties, if that can be collected from the face of the
instrument.   Giving it the interpretation we think it should
have, it is made sensible and consistent. · But there is another
principle of law applicable.   In a case where the agreement is
partly written and in part printed, the preference is always
given to the written part.   What is printed, is intended to
apply to large classes of contracts, and not to any one exclu-
sively; the blanks are left purposely, that the special state-
ments or provisions should be inserted, which belong to the
particular contract, and not to others, and thus to discriminate
this from others.   So Lord Ellenborough held, in the case of
*Robertson and Thomasson* v. *French*, 4 East, 360, when he
said, that words superadded in writing, are entitled, if there
should be any reasonable doubt upon the sense and meaning
of the whole, to have a greater effect attributed to them, than
to the printed words, inasmuch as the written words are the
immediate language and terms selected by the parties them-
selves for the expression of their meaning, and the printed
words are a general formula adapted equally to their case, and
that of all other contracting parties, upon similar occasions
and subjects.   And the same principle was recognized by
Baron Parke, in the case of *Alsager* v. *St. Katharine's Dock
Co.*, 14 Meeson & Welsby, 796, in which he admits, when
effect is to be given to two parts of an agreement, partly
written and in part printed, which are apparently inconsistent,
the court will look at the written part of the contract as ex-
pressing the intention of the parties.   The expressions intro-
duced by the parties in the particular case, must be considered

as conveying their real intention.   This doctrine is recognized by Parsons in his treatise on Contracts, sec. 3, page 28, and may be considered as well settled.   It certainly is good sense, and reasonable.   So held also in the case of *Weisser* v. *Maitland*, 3 Sandford, 322.

The printed blank used in this case, is applicable to ordinary packages only, and the formula adapted to the cases in which it is properly used, must yield to the written contract of the parties, that the draft was received for collection, and must control the printed words, "except as forwarders only," and every other like printed stipulation.   It was an agreement to collect the draft at Chicago, and so understood by the contracting parties, else why the indorsement on the envelope, "$1,000, for collection—From J. G. Pinckney, Dixon, Ill.— August 8, 1861—Fay & Co., Chicago, Ill."?   And why the instructions indorsed on the same, "Return proceeds on the inclosed with this envelope, without delay, well sealed with wax"?   And why the entry in the books of the company? All these formed a part of the written contract.   To collect this draft was the sole and only object of the delivery to the company, and they undertook to collect it, but neglected so to do.   By the carelessness of their agent, who mistook the date of its maturity, a loss of one thousand dollars has accrued to the plaintiff, and the company attempts to shelter itself from responsibility, by a printed formula, applicable alone to a package of goods, repudiating their express contract to collect the draft, and return the proceeds.   No excuse is offered for the neglect—no palliation of their gross negligence attempted, and public policy, as well as strict justice, requires that they should be held to a prompt compliance with all their obligations, and to the strictest performance of all their duties.

We are satisfied that the written portion of the receipt—the indorsement on the envelope, and the entry of the transaction in the books of the company, as they were all made at one time, are the contract, and they fully explain the nature of this contract, and that was to collect this draft.   Though the business of a forwarder is very different from that of a collecting agent, yet when a forwarder undertakes to collect, as

well as forward, he should be held to a strict accountability if he fails to collect. The case shows, the money could have been collected, if the draft had been presented to Fay & Co. at maturity. They were then able and willing to pay. By the negligence of the company, the plaintiff has lost his recourse on the indorsers, both of whom are proved to be responsible, and have abused a trust they held themselves out to the world as able and willing to perform, and ought not to avoid the payment of damages for their default.

We can perceive no objection to the manner in which the court disposed of the instructions, and see no error in the record. The judgment is therefore affirmed.

CATON, C. J. I am unable to concur in this judgment. The paper called a receipt is the written contract between the parties, and it is as incompetent to alter or extend this by parol as any other written contract. This written contract defines and fixes the rights, duties and liabilities of the parties. If here was an undertaking to collect, there is an express agreement, that the defendants should be liable as forwarders only. Here is an express waiver of all claims to damages for neglecting to collect. There is no complaint that they did not forward faithfully, and I can find no principle upon which to rest a liability expressly waived by the contract, which was executed and delivered by the defendant, and accepted by the plaintiff, for the purpose of fixing and determining their rights and liabilities.

*Judgment affirmed.*