Decided at PENDLETON, 13 August, 1898.

### HARGETT *v.* BEARDSLEY.

[54 Pac. 208]

1. PLEADING.— Under the rule here established that an objection to a complaint because it does not state a cause of action is never waived, it is immaterial whether a court erred or was correct in overruling a motion for judgment *non obstante* after disposing of a demurrer which raised the same point.

2. CONSTRUCTION OF CONTRACT—LEASE.— A contract by which one person is to rent certain premises, advance and pay the rent therefor, furnish necessary grain to seed the same, advance the money for harvesting the crops and the sacks for the same, and a second person is to cultivate the land and care for the crop produced until ready for harvesting, furnish the necessary assistance in harvesting, and out of the proceeds arising therefrom repay the former all money advanced for harvesting, sacking and marketing the crop and for rent of the premises, and also a debt due from him to such former person, entitles the husbandman to any surplus remaining after making such payments, although the contract is silent in regard thereto. Considered in its entirety the contract is one of leasing.

3. TENANCY IN COMMON.— A tenancy in common between the landlord and tenant in the crop produced by the latter is never created where there is a cash rental.

From Umatilla: STEPHEN A. LOWELL, Judge.

Action by J. D. Hargett against James S. Beardsley. Judgment for plaintiff. Defendant appeals.

                                        AFFIRMED.

For appellant there was a brief over the names of *Carter & Raley* and *Stillman & Pierce*, with an oral argument by *Mr. A. D. Stillman.*

For respondent there was a brief over the name of *Balleray & Hailey*, with an oral argument by *Mr. Thos. G. Hailey.*

Mr. Justice Wolverton delivered the opinion.

This is an action for money had and received, and the complaint alleges, in substance, that about February 15, 1896, the plaintiff was indebted to defendant in the sum of $1,500, for which he had given his promissory note and a mortgage to secure the same, and, being so indebted, plaintiff and defendant entered into a contract whereby defendant undertook and agreed to rent certain premises of a third party, consisting of 370 acres, advance and pay the rent therefor, furnish the necessary grain to seed the same, advance the necessary money for harvesting the crop and furnish the necessary sacks for sacking the same, and the plaintiff undertook and agreed upon his part to plow and summer-fallow the land during the spring and summer of 1896, and in the fall of the same year to sow the same to wheat, with the seed furnished by defendant, in a good and husbandlike manner, cultivate and care for the crop produced until ready for harvesting, furnish the necessary assistance in harvesting the same, and out of the proceeds arising therefrom repay to the defendant all moneys advanced by him for seed, harvesting, sacking, and hauling the crop to market, together with the amount advanced for rent of the premises, and also pay out of such proceeds, if there should be sufficient for the purpose, the sum of $1,500 due as aforesaid from the plaintiff to defendant. Then follow allegations touching the leasing of the premises by defendant in compliance with the contract; the plowing, summer-fallowing, sowing and harvesting upon the part of plaintiff; and the further fulfillment of the terms and stipulations of the agreement as it regards both parties; and the amount of wheat produced and harvested. The complant further avers that about September 1, 1897, the defendant, with the consent of plaintiff, and as his

agent, sold and disposed of the wheat thus produced for the sum of $8,604.72, and was authorized by plaintiff to deduct therefrom the aggregate sum of $2,430 due him for moneys advanced for rent of land, harvesting expenses, sacks, hauling, etc., and the further sum of $1,522.50, the amount then due upon said promissory note, and that there remained after such deductions the sum of $4,252.22, which the defendant had and received to and for the use and benefit of the plaintiff.  A demurrer was interposed to the complaint, and overruled by consent of the parties.   At the trial objections were made and overruled to the introduction of plaintiff's evidence upon the ground that the complaint did not state facts sufficient to constitute a cause of action, and after a verdict for plaintiff the defendant moved for judgment *non obstante*, based upon the same ground, which was also overruled ; and the action of the court in so disposing of the objections and motion constitutes the principal assignments of error.

1. It has been suggested that a demurrer to the sufficiency of the complaint having been overruled by consent of the parties precluded the defendant from raising the same question by motion for judgment *non obstante*. The statute gives the right to the defendant, when the complaint does not state a cause of action, to interpose such motion, but upon condition that the objection has not been taken by demurrer.   Hill's Ann. Laws § 266. A similar rule prevailed at common law, which was that " after judgment upon demurrer there can be no motion in arrest of judgment for any exception that may have been taken on arguing the demurrer " : *Order of Mutual Aid* v. *Paine*, 122 Ill. 625, 628, ( 14 N. E. 42 ) ; *American Express Co.* v. *Pinckney*, 29 Ill. 392 ; *Quincy Coal Co.* v. *Hood*, 77 Ill. 68.   But this is perhaps more a matter of

technical practice than of substance, as the objection for the cause named is never waived, and may be urged for the first time in the appellate court : *Evarts* v. *Steger*, 5 Or. 147 ; *Booth* v. *Moody*, 30 Or. 222 ( 46 Pac. 884 ) ; *Wilson* v. *Myrick*, 26 Ill. 34. There is, however, reason for its support, in that, the court having once passed upon the identical question in disposing of the demurrer, it becomes the law of the case in the court below in the subsequent proceedings ; and, while it could not be said that the court below erred in refusing to entertain a motion for judgment *non obstante* after it had passed adversely upon a demurrer going to the same question, yet, the record being before us upon appeal, we may inquire whether the complaint, so objected to at either stage of the proceedings, or here for the first time, is so defective as to render it insufficient to sustain the judgment : *Chicago & E. I. Railway Co.* v. *Hines*, 132 Ill. 161 ( 22 Am. St. Rep. 515, 23 N. E. 1021). In this view it becomes unnecessary to inquire what was the effect of overruling the demurrer by consent, or to consider the objections made to the introduction of evidence, and we will proceed at once to a consideration of the sufficiency of the complaint.

2. The pivotal contention of defendant is that, having himself leased the premises upon which the crop was produced, he stands in the situation of the owner of the soil, and, having furnished the seed for its production, that he became the owner of the crop, and hence that the proceeds thereof were his, and could not inure to the use or benefit of the plaintiff; in short, that the complaint does not show that plaintiff became the owner of the wheat, when produced, and that a receipt of its proceeds when marketed by the defendant was for his use. It requires an analysis of the complaint to determine whether

this position is tenable. As disclosed thereby, the defendant agreed to the following : First, to rent the premises, and to advance and pay the rental; second, to furnish the seed wheat; third, to advance the necessary money for harvesting the crop, and furnish sacks for sacking the same ; while plaintiff agreed : First, to plow and summer-fallow the land, and seed the same with the seed furnished by the defendant; second, to care for the crop until ready for harvest, and furnish the necessary assistance in harvesting the same ; and, third, to repay, out of the proceeds thereof, to defendant, (1) all moneys advanced by him for seeding said land, (2) all moneys for harvesting said crop, (3) all moneys for sacking and hauling the same, (4) all moneys advanced by him as rent for said land, and, (5) if sufficient remained, to repay the said sum of $1,500 due defendant upon the said note. These comprise the mutual undertakings of the parties. A surplus was probably not in contemplation, but an unexpected yield produced it, and the controversy is concerning the ownership. There is no direct allegation that plaintiff was the owner of the crop, and the question is whether there is sufficient from which ownership might be inferred. The inducement for the contract was the indebtedness due from plaintiff to defendant. This, we think, is apparent. The defendant was to, and did, lease the premises ; and this, of course, vested in him the legal title to the leasehold estate thus created; and, to strengthen the position, we may suppose that he was the absolute owner of the soil. Now, the ultimate stipulation touching the rental was that plaintiff shall pay it. The defendant was to pay the owner in the first instance, but plaintiff agreed to reimburse him for the outlay ; so that in the end the burden was to fall upon the plaintiff. So it was with all advances made by defendant for seed,

expenses of harvesting, sacks, etc.   He was to be reim-
bursed by the plaintiff to the uttermost farthing, and
made absolutely whole for every outlay.   The plaintiff
was charged with the cultivation of the soil, seeding, car-
ing for the crop, and furnishing assistance in harvesting
the same.   Here is a direct expenditure of labor, for
which no remuneration is provided, unless it be assumed
that he was producing his own crop.

Another significant feature of the transaction is that
such reimbursement by the plaintiff was to be made out
of the proceeds of the crop.   An exaction of the under-
taking to make implies a willingness to receive repay-
ment of such proceeds at the hands of plaintiff, so that
we do not have far to go to find an inference of owner-
ship.   It is bad logic to say that plaintiff will repay
defendant for disbursements, and a debt for money
loaned, out of the proceeds of defendant's own property.
There could be no discharge of obligations by such
method.   True, the agreement contemplated the assump-
tion of obligations on the part of plaintiff; but at the
same time it provided for their discharge, as well as for
a partial or total discharge of the primary obligation
which formed the inducement for the mutual undertak-
ings of the parties.   The ultimate effect of the contract
was a leasing of the premises by plaintiff from defendant
as if he was the owner thereof, and a payment to him of
the stipulated rental for its use ; and the crop became
the property of plaintiff, as if he had rented lands in the
usual course, and paid a cash rent therefor.   There is
ample ground for an inference of ownership of the crop
in the plaintiff.   But this is not all.   The complaint
shows that the defendant came into possession of the
grain sold with the consent and as the agent of plaintiff,
and that he received the money as the proceeds of such
sale to the use and benefit of plaintiff.   If there is any

defect in the complaint, it is certainly cured by the verdict. The allegations are sufficiently general to comprehend ownership by plaintiff of the crop produced, and we must assume that evidence pertinent to the inquiry was given, sufficient to support the verdict returned in plaintiff's behalf: *Booth* v. *Moody*, 30 Or. 222 (46 Pac. 884); *Kean* v. *Mitchell*, 13 Mich. 206, 212.

3. Another question suggested was that the leasing was of joint concern, and that plaintiff and defendant became tenants in common of the crops produced. But under our interpretation of the contract that relationship could not exist. A cash rental can never produce a tenancy in common between the landlord and tenant in the crop produced by the tenant. The landlord receives his compensation, not in the product of the soil, but in money. The judgment of the court below must therefore be affirmed. The exceptions reserved to instructions are but another method of presenting the same questions, and need not be considered.

AFFIRMED.