In re Mathew R. MONROE, aka Matt Monroe and Barbara J. Monroe, both dba Monroe Farming, Debtors.

Bankruptcy No. 683–07540.

United States Bankruptcy Court, D. Oregon.

Dec. 30, 1985.

J.F. Fliegel, Jr., Medford, Or., for trustees.

Robert Hamilton, Klamath Falls, Or., for N R Ranch.

Michael Miller, Klamath Falls, for Basin Chemical & Fertilizer Co.

Richard Belcher, Klamath Falls, Or., for Don Rice.

ALBERT E. RADCLIFFE, Bankruptcy Judge.

This matter comes before the court upon the trustee's Notice of Intent to Pay Five Thousand Four Hundred Sixty-seven Dollars ($5,467) to N R Ranch as an expense of administration of this estate. Two creditors, Basin Fertilizer and Chemical Company, Inc. and Don Rice, by and through their respective attorneys, Michael C. Miller and Steven A. Zamsky, have filed objections to such proposed payment. This court concludes that the objections should be overruled and that the payment proposed by the trustee should be allowed.

On April 13, 1983, debtor, Mathew R. Monroe (debtor) as lessee, entered into an agreement entitled "Crop Share Rental" with N R Ranch, a partnership, as lessor, whereby debtor would lease approximately 330 acres of lessor's land for the 1983 crop year. In exchange, debtor agreed that N R Ranch would receive, as rent, one third (⅓) of the gross proceeds of all grain and fifty-five percent (55%) of the gross proceeds of all hay grown on the land. Debtor agreed to supply all labor, equipment, seed, fertilizer and other supplies necessary to plant, cultivate and harvest the grain. N R Ranch agreed to provide irrigation equipment, water and to pay all utility costs resulting from irrigation carried out, by debtor, on the land. The agreement further provided that the crops grown would be owned by the parties as tenants in common from the date the crops were planted. N R Ranch's undivided interest in the crops would be equal to the share of crop proceeds payable for use of the land. The agreement recites that approximately fifty (50) acres of land had already been planted for hay. At the hearing, the parties made no representation to the court as to when the grain was planted. This court therefore assumes, for the purpose of this opinion, that the grain was planted between April 13, 1983 and May 20, 1983.

The debtor and his wife, Barbara J. Monroe, filed a joint petition for voluntary relief under Chapter 11 of Title 11 U.S.C. (the Bankruptcy Code) on May 20, 1983. Thereafter, they continued as debtors-in-possession until their case was converted to a case under Chapter 7 of the Bankruptcy Code on December 9, 1983. J.F. Fliegel, Jr. has been duly appointed and is acting as the Chapter 7 trustee in this case.

During the administration of this estate under Chapter 11, the debtor carried out the terms of the agreement described above, by cultivating the N R Ranch property, harvesting the crops and delivering grain for storage and sale to Waldrup Brothers Grain Elevator. In his notice, the trustee represents that he has collected Sixteen Thousand Four Hundred Four Dollars Ninety-six Cents ($16,404.96) from Waldrup Brothers Grain Elevator for the sale of this grain (barley). He proposes to pay one-third (⅓) of this amount, the sum of Five Thousand Four Hundred Sixty-sev-

en Dollars ($5,467), to N R Ranch as an expense of administration, in accordance with the above-described agreement.

In response to the trustee's notice, two creditors, Basin Fertilizer and Chemical Company, Inc. and Don Rice (objecting creditors) objected. They argue that the agreement between N R Ranch and the debtor creates a pre-petition, unsecured debt that should not be paid as an expense of administration. They further contend that any lien, held by N R Ranch, on either the grain itself or the proceeds from the sale thereof, is subject to avoidance, by the trustee, under 11 U.S.C. 545 as a statutory lien that is:

1. a lien that is "... not perfected or enforceable on the date of the filing of the petition against a bona fide purchaser ..." 11 U.S.C. 545(2);

2. "... is for rent, ..." 11 U.S.C. 545(3); or

3. "... is a lien of distress for rent." 11 U.S.C. 545(4).

N R Ranch maintains that they are entitled to enforce the terms of the agreement since its interest in the grain is as a tenant in common, with the debtor, as provided in the agreement.

This court must first decide whether or not the estate and N R Ranch own the grain and its proceeds as tenants in common. The pertinent portions of the agreement of April 13, 1983 are found in paragraphs 3 and 4 thereof, as follows:

3. *Rent.* The LESSEE shall pay to LESSOR as rent for the use and possession of the PREMISES one-third of the gross proceeds from the grain grown and produced on the PREMISES during the term of this Lease, and fifty-five percent of the gross proceeds for the hay produced on the PREMISES.

4. *Ownership of Crops.* Any crop planted, cultivated and/or grown on the PREMISES under the terms of this Lease shall be owned by the LESSOR and LESSEE as tenants in common. The LESSOR shall own an undivided interest in the crop equal to the share of the crop payable to him as rent for the PREMISES, referred to above, and such interest shall vest in LESSOR at the time the crop is planted on the PREMISES.

It appears to be the clear intention of the parties, as set forth in the Crop Share Rental agreement, that they would own the crops and the proceeds derived therefrom as tenants in common.

Further, in cases where an interest in the crop is reserved as payment for rent—

... the rule seems to have been settled in this jurisdiction that as to the crops in which the landlord is given a right to a fractional part as a consideration for the contract of lease, the parties thereto, namely, the landlord and the tenant both have an estate or interest therein as tenants in common, ... *Balla v. Ireland,* 183 Or. 663, 675, 196 P.2d 445 (1948).

The cases cited by the objecting creditors are distinguishable from this case. *Hargett v. Beardsley,* 33 Or. 301, 54 Pac. 203 (1898) involved a situation where a creditor agreed to rent land (paying the rental payments in advance) and to advance the tenant-farmer the seed to plant the crops, money for harvesting and sacks for sacking the crop. The farmer agreed to provide the necessary labor for the operation. The agreement further provided that, after harvest, the farmer would repay all funds advanced by the creditor as well as a pre-existing debt. A bumper crop yielded a surplus after payment of all the agreed expenses and pre-existing indebtedness. Both parties claimed the surplus funds. The court held that the parties could not own the proceeds as tenants in common when, in reality, there was a cash rental. Although the creditor had agreed to advance funds, the ultimate burden was upon the farmer to pay the expenses, thus, the court treated the farmer as the actual tenant and owner of the surplus funds. In *Varney v. Derryberry, (In re Stroh),* 38 B.R. 95 (Bankr.N.D.Ohio 1984), it appeared that the rental agreement was based upon a price per acre formula or a fixed payment for the use of the land, not a fractional part of the crop, or its proceeds. It is notewor-

thy that in construing Ohio law, the court stated in its opinion that: "... when the compensation for use of the land is paid as a share of the crop, the parties become tenants in common in the crop." 38 B.R. at 100.

This court concludes that the clear intent of the parties and the settled law in Oregon is such that the debtor and N R Ranch must be treated as owners of the grain crop and any proceeds from the sale thereof as tenants in common. The trustee was correct in his proposal to pay one-third (⅓) of the proceeds thereof to N R Ranch as and for its ownership interest in the crops. In light of this opinion, we need not discuss the other issues raised by the parties. Accordingly, the objections posed by the objecting creditors should be overruled.

This opinion shall constitute this court's findings of fact and conclusions of law, they shall not be separately stated.