Argued September 21, reversed October 22, 1915.

## INGRAM v. CARLTON LUMBER CO.

(152 Pac. 256.)

**Release—Pleading—Fraud.**

1. In a servant's action for injury under the Employers' Liability Act (Laws 1911, p. 16), where the answer traversed the allegations of negligence and affirmatively alleged that plaintiff had made a claim against defendant, that defendant had paid plaintiff $150, and that plaintiff released defendant from all demands, a reply alleging defendant's representation of payment for lost time and that plaintiff accepted the payment and signed a document which he believed was a receipt for payment for lost time, that its contents were never explained to him to be in complete satisfaction, and that it was procured by misrepresentation, was insufficient to charge defendant's fraud, as it did not state that the document was the release relied upon by defendant, or by whom the information was given to plaintiff, or any duty of the defendant to explain the document.

[As to contracts by servants waiving right to recover for injuries which may be received in course of their employment, see note in 3 Am. St. Rep. 255.]

**Damages—Personal Injury—Lost Time.**

2. Lost time resulting from a servant's injury, together with the deprivation of wages, constitutes an element of damages recoverable in his action under the Employers' Liability Act.

**Action—Splitting Cause of Action.**

3. A party is not allowed to split his cause of action, but all the elements of damages relied upon must be included in one complaint.

**Release—Release of One Joint Tort-feasor—Effect.**

4. The release of one joint tort-feasor releases all.

**Trial—Instructions—Pleadings.**

5. In a servant's action for injury, where plaintiff claimed that a release set up by defendant had been procured by fraud, but did not plead that the relation of attorney and client existed or was pre-

tended by defendant to exist between plaintiff and the person procuring the release, an instruction on the theory that such relation existed was erroneous, and not in conformity with the pleadings.

**Release—Validity—Representation by Attorney.**

6. One who paid an amount to a servant claiming to have an action for injury and procured his release was not required to notify the servant to employ an attorney or someone able to give him business advice.

**Release—Circumstances—Pleading.**

7. The duty of giving such notice to the servant, if any, should have been averred with facts showing that plaintiff came within their scope.

**Release—Invalidity—Returning Consideration.**

8. In a servant's action for injury, the consideration paid for the release set up by defendant is to be deducted from any greater amount recovered against the defendant.

From Yamhill: WEBSTER HOLMES, Judge.

This is an action by Harry Ingram against the Carlton Lumber Company and others, to recover for personal injuries. From a judgment in favor of plaintiff, defendants appeal. The facts in the case are set forth in the opinion of the court.

REVERSED. NEW TRIAL ORDERED.

For appellants there was a brief over the names of *Mr. F. C. Howell, Messrs. Wilbur, Spencer & Beckett, Mr. A. L. Clark* and *Messrs. McCain, Vinton & Burdett,* with an oral argument by *Mr. Howell.*

For respondent there was a brief over the names of *Mr. Isham N. Smith, Mr. Lon L. Parker* and *Mr. Richard Talboy,* with an oral argument by *Mr. Smith.*

Department 1. MR. JUSTICE BURNETT delivered the opinion of the court.

This is an action instituted against three defendant corporations, charging them jointly under the Employers' Liability Act for injuries received by plain-

tiff while working for them upon their lumber-yard. The employment was admitted by the answer, but all the allegations of the complaint imputing negligence or any act of commission or omission operating to the hurt of the plaintiff were traversed. In the affirmative the answer set forth the following:

"That on the twenty-fourth day of March, 1914, the said plaintiff made a claim against these defendants on account of said accident, and that on said day the said Carlton Fir Lumber Company paid to the said plaintiff the sum of $150 in full and agreed satisfaction of the disputed claim growing out of the accident that happened to said Ingram mentioned in the said complaint on the tenth day of March, 1914, which is the accident referred to herein, satisfying in full all the claims of this plaintiff for bodily injuries on account of said accident on account of which these defendants might be legally liable, or on account of which either one of them might be liable, and in consideration of the said sum of $150 said plaintiff did release and forever discharge said Carlton Fir Lumber Company, its successors and assigns, from any and all actions or causes of action, claims or demands of the said plaintiff on account of any damage, loss or injury that was suffered or sustained on account of said accident and injury, which is the same injury referred to in said complaint, and that the said claim of the said plaintiff has been settled, satisfied, compromised and discharged, and the said plaintiff has executed to these defendants and each of them a full and complete satisfaction and release, and that said claim of plaintiff alleged herein has been fully paid, satisfied and discharged."

In respect to this defense the reply admits the payment of $150, but otherwise denies the allegation of release, and then goes on to state as follows:

"Affirmatively this plaintiff avers that about the twenty-fourth day of March, 1914, the defendants

represented to plaintiff and told him that they would pay and did pay him for his loss of time caused by the injuries complained of herein, and that plaintiff accepted whatever sums were paid him as payment for his said lost time, and not in satisfaction for his injuries; that the plaintiff thereupon signed a document, which he was informed and believed was a receipt for payment for his lost time as herein alleged; that the contents of said instrument were never explained to plaintiff to be for a complete, or other satisfaction for his injuries, or at all; that if the said instrument purports to be a release of the matters and things involved in this cause, such instrument was procured from the plaintiff by the defendants through misrepresentation and deceit, as herein alleged, and the minds of the plaintiff and defendant never met upon the alleged and purported agreement set up in the second affirmative answer of the defendant.''

1. The reply is insufficient in the new matter for several reasons. It does not state that the document mentioned therein was the release relied upon by the defendant. Further, while he said ''he was informed and believed that the paper was a receipt for payment for his lost time as herein alleged,'' he does not state by whom that information and belief was imparted, whether by the defendants or anyone acting for them, or not. Again, it is said ''that the contents of said instrument were never explained to plaintiff to be a complete, or other satisfaction for his injuries, or at all.'' No fact is stated making it the duty of the defendants to explain the paper or its contents. No false representation is imputed to them, and no effort to hoodwink or deceive plaintiff is mentioned. This court has laid down the precept in *Leavengood* v. *McGee,* 50 Or. 233, 239 (91 Pac. 453, 456), in this language:

"The rule is that the facts upon which fraud is predicated must be specifically pleaded. A mere general averment of fraud is nothing but the averment of a conclusion, and will not suffice. It presents no issue for trial, and is bad on demurrer. Such an averment not only renders the bill or complaint demurrable, but it will not even sustain a decree": 20 Cyc. 734; *Leasure* v. *Forquer*, 27 Or. 334 (41 Pac. 665).

Construing a pleading in *Anderson* v. *Adams*, 43 Or. 621, 627 (74 Pac. 215, 217), Mr. Chief Justice MOORE enunciates the principle in these words:

"To constitute a fraud by false representations, so as to entitle the plaintiff to relief, three things must concur: (1) There must be a knowingly false representation; (2) the plaintiff must have believed it to be true, relied thereon, and have been deceived thereby; and (3) that such representation was of matter relating to the contract about which the representation was made which if true, would have been to the plaintiff's advantage, but, being false, caused him damage and injury."

The principle is reiterated and the cases reviewed by Mr. Justice RAMSEY in *McFarland* v. *Carlsbad Sanitorium Co.*, 68 Or. 530 (137 Pac. 209, Ann. Cas. 1915C, 555). Thus tested, the reply fails to assign a reason sufficient to release the plaintiff from the writing he executed.

Finally, the new matter of the reply is an effort to plead a rescission of the contract, but does not show that as a part thereof the plaintiff has even offered to return the money he received. The views of the writer on that subject, with the authorities, are set forth in the dissenting opinion in *Foster* v. *University Library Co.*, 65 Or. 46, 67 (131 Pac. 736). The plaintiff himself testified that he signed the following writing:

"Carlton, Ore., March 24—14.

"I, Harry Ingram, a bachelor, twenty-two years of age, and of sound mind, do hereby release and for-ever · discharge the Carlton Fir Lumber Company, for and in consideration of $150, from any and all claims arising or to arise from or on account of the injury sustained by me on or about March 10, 1914, at the plant of the Carlton Fir Lumber Company at Carlton, Ore.

"[Signed]   HARRY INGRAM."

The plaintiff had a common school education and could read and write. The instrument fixed the rights of the contracting parties unless the same is set aside on account of fraud or some like reason properly pleaded. Without averring some mental defect dis-qualifying him to make a contract, or some fraud or deceit practiced upon him by the defendants, it will not avail him to allege merely that he did not understand the document in question. Above all, having profited by the transaction, common honesty, which lays its in-junction alike upon the learned and unlearned, the rich and the poor, requires that accompanying the rescis-sion he should return the benefit derived from the con-tract before trying to get more out of the defendants. What is here stated about the plaintiff's duty to return the money paid to him on the alleged release is the opinion of the writer in which some other members of the court participating in the hearing of this case do not concur.

2. The loss of time resulting from the injury, to-gether with the attendant deprivation of wages, con-stitutes an element of damage recoverable in an action of this sort. The plaintiff says he understood the paper in question to be a receipt for such prospective wages. Adopting his own construction of it, and still

allowing him to prosecute this cause, notwithstanding the release, is nothing less than permitting him to split his cause of action.

3. It is hornbook law that this is not allowed, and that all the elements of damage relied upon must be included in one complaint, to the end· that there shall be but one recovery for the one tort. It would be quite as logical, after final judgment in this action shall have been paid, to sustain him in another to recover for the value of medical attendance, then in a different one for hospital fees, and afterward to let him sue for nurse hire. To overturn the release on the showing made in this case is, in effect, making it virtually impossible for an employer to settle claims for injuries incurred in his service. He will perforce be compelled to litigate them. Any amount he may pay in adjustment of a demand will be used in promoting an action against him upon the same demand. Fair play, if nothing else, requires that, if a plaintiff would rescind the release, he should restore the other party to his former situation, so that each may start even in any subsequent contest. In practice this would work no injustice, for those who profit most in promoting such litigation are generally able to advance the money for all attendant purposes.

Upon the subject of the release the court gave and the defendants excepted to the following instruction:

"It is contended here by these defendants that the plaintiff, for a consideration of $150, released and settled all claims he might have against the Carlton Fir Lumber Company and its successors. Only the one defendant, and in support of that contention they have introduced in evidence a release here, what purports to be a release—it is for you to determine whether or not it has that effect, under the instruction which I will give you, and which has been read to you. This docu-

ment only purports to release one defendant. It is entirely silent as to the other defendant in this action. So, if it were valid at all, it would only release the one; and I will instruct you, as a matter of law, if this release were obtained fairly and executed understandingly by this plaintiff, and this attorney, Thompson, who has testified here, performed his duty as an attorney and lawyer, it would be binding upon this plaintiff, and release them so far as the defendant mentioned in the release was concerned, and if it has not been so procured and executed, it is absolutely void; so the question for you to determine is whether or not that has been done or not.

"Now, in approaching that situation, you should first take into consideration, consider carefully, the age and experience of this plaintiff as disclosed by the evidence, his education, the circumstances under which he labored at the time he signed this. You have heard the testimony upon that as to his condition of body and mind, and all of the surrounding circumstances attendant upon this man Thompson's visiting him and going out of his room with this document which is in evidence. And, on the other hand, you will take into consideration, which is undisputed here, the education of the man Thompson, and his claim of sufficient knowledge to enter into the practice of law, which is of itself a statement, as you might call it, to the public that he has passed the required qualifications to follow that profession, and it imputes to the public and every person that has occasion to come in contact with him that he is honest, will deal with all persons fairly, and will take no undue advantage. I am speaking now of the genuine lawyer. I make no reference to shysters, or any of that class of men, who are a disgrace to the profession, not intimating that Thompson is one of that class. That is for you to determine.

"Now the laws of this state with reference to attorneys, as to their general duties, amongst others, is to maintain such an action, suit, proceeding, or defense only as may appear to them a legal and just defense

of the person charged with an offense, and to employ for the purpose such means as would be honorable, and never seek to mislead the court or jury by any artifice or false statement of law or fact, and, aside from what comes within the general duties which prescribe the attitude of an attorney at law, or lawyer before the public, the law requires that before an individual can be admitted to practice law he furnish sufficient proof to the Supreme Court of good character, and that he will not enter into the practice of deceiving people, and if an attorney in the transaction of business with any individual does not disclose every element and fact in connection with the controversy and explain carefully and truthfully their rights, he is not discharging his duty, and the courts will scrutinize his conduct, and the action of every attorney is bound to be based on the utmost good faith before it will stand. If not, the courts will set it aside in the proper proceedings against him; and it was the duty of this man Thompson, who, the evidence shows, went down—he claims he went down voluntarily, although he represented this indemnity company—to visit this plaintiff. If he wanted to effect any settlement with this young man, the law required of him that he disclose and state accurately and truthfully to the young man all his rights, legal rights, in this matter, and he could not act for this plaintiff and this other company as attorney at the same time. He either had to represent one or the other, and if you should find he was there at the instance of some other client, this indemnity company or either of the defendants, it was his duty to notify this young man, if he wanted to enter into any settlement, not being on an equality in education and experience, if you should so find, to employ an attorney of his own or someone who was able and competent to give him business advice. And if he did not do that, this settlement is void from every standpoint. And you have heard the evidence of the two of them with reference to that.''

4. The instruction is wrong in more respects than one. In saying that ''this document only purports to

77 Or.—41

release one defendant, it is entirely silent as to the other defendant in this action, so that, if it were valid at all, it would only release the one," the court ignored the rule laid down in *Stires* v. *Sherwood,* 75 Or. 108 (145 Pac. 645), which holds that a release of one joint tort-feasor releases all of them.

5. Moreover, the instruction proceeds upon the theory. that the relation of attorney and client existed or was pretended by the defendants to exist between the plaintiff and the individual effecting the settlement whereby the plaintiff was deceived. This, however, is not pleaded on behalf of the plaintiff. Hence an instruction on that ground is purely academic and abstract and was on that account erroneous. It is elementary that the instructions should correspond with the pleadings.

6, 7. Again, without any pleading on the subject, the court cast upon the man who procured the release the duty of notifying the plaintiff "to employ an attorney of his own or someone who was able and competent to give him business advice," and drew the conclusion that, unless such notice was given, the "settlement is void from every standpoint." There is no rule of law that if one party to a transaction is represented by an attorney the other must be. If such a duty were enjoined by law under any circumstances, they should be averred, and facts stated showing that the plaintiff came within their scope. In any event, the release would not be void, but only voidable, for lawful reasons properly averred.

8. In speaking of the amount of damages the court said to the jury:

"Should you find for the plaintiff, you are not to take into consideration this $150 that has been paid to him; that has not anything to do with this case."

The most ultra of the authorities which lean toward allowing a plaintiff to retain the consideration paid for the alleged release, and yet sue for damages in a greater amount, do not hold that no account must be taken of the money thus paid, but rather that it should be deducted from any greater amount in which the plaintiff is found to be injured.

The judgment should be reversed and a new trial ordered.          REVERSED.  NEW TRIAL ORDERED.

MR. JUSTICE BENSON concurs.

MR. JUSTICE MCBRIDE concurs in the result.

MR. CHIEF JUSTICE MOORE dissents.