Argued May 29, reversed and remanded June 19, 1917.

# LINDSTROM *v.* NATIONAL LIFE INS. CO.*

### (165 Pac. 675.)

**Insurance—Avoidance—Estoppel—Physician's False Answers in Application.**

1. If an applicant for life insurance makes truthful statements to medical examiner, who, without applicant's knowledge, changes answers to questions in application to make it appear that insured is a safe risk, insurer will be liable on the policy issued in consequence of the deceit of its agent.

**Insurance—Action on Policy—Reply—Knowledge of False Statements in Application—"Collusion."**

2. In action on a life policy, reply stating that insured signed application without "collusion" with medical examiner did not allege insured's lack of knowledge of physician's statements therein, the word "collusion" meaning a secret agreement and co-operation for a fraudulent or deceitful purpose; a playing into each other's hands; deceit; fraud.

**Insurance—Action on Policy—Sufficiency of Evidence—Knowledge of False Statements in Application.**

3. In an action on life policy, evidence *held* to justify inference that insured truthfully answered medical examiner's questions, and the latter changed answers in application without insured's knowledge.

[As to effect of insurer's agent inserting in application false statements or answers by insured, see note in 9 **Am. St. Rep.** 229.]

**Pleading—"Aider by Verdict."**

4. The absence from a written statement of facts constituting a cause of action or defense of a material averment will not be supplied by a verdict, but such finding will cure a defective statement in a pleading, the principle of the rule being that, where pleading is sufficiently general to comprehend matter so essential to be proved that, had it not been given in evidence, the jury could not have found the verdict, the want of the statement of such matter in express terms will be cured by the verdict, because evidence of the fact would be the same whether the allegation is complete or imperfect; but, where a material allegation is wholly omitted, it cannot be presumed that any evidence referring to it was offered on the trial.

**Pleading—Aider by Verdict—Action on Life Policy.**

5. In action on a life policy, where reply stated that medical examiner's misstatements in application were made without "collusion" instead of that they were made without insured's knowledge, a verdict for plaintiff cured the imperfection, since, if the matter had been called to the attention of the trial court, an amendment would probably have been allowed.

---

*On effect of agent's insertion in the application of false answers to questions correctly answered by the insured, see notes in 4 **L. R. A.** (N. S.) 607; **L. R. A.** 1915A, 273.    REPORTER.

Fraud—Allegations in General.

6.   A pleading alleging fraud must aver falsity of representations, defendant's knowledge thereof, that they were made with intent to defraud, and that the party seeking relief relied thereon.

Insurance—Action on Policy—Sufficiency of Reply—Fraud Inducing
    Release.

7.   In action on life policy the reply was insufficient to show that beneficiary was fraudulently induced to execute alleged release, where it failed to charge that insurer knew falsity of representations, or that they were recklessly made, or that they were made with intent to deceive.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 2.   Statement by MR. JUSTICE MOORE.

This is an action by Eda J. Lindstrom against the National Life Insurance Company of the United States of America to recover upon a policy of insurance. The complaint alleges in effect that, on April 17, 1913, the plaintiff was the wife of Oscar F. Lindstrom; that the defendant then and at all times thereafter was and is a corporation and authorized to do business in Oregon; that on that day the defendant in consideration of $51.67 executed to Oscar F. Lindstrom a policy of insurance by the terms of which it agreed to pay plaintiff $1,000 upon receipt of the proof of the death of the assured during the continuance of such contract; that on April 3, 1914, and while the policy was in force, Oscar F. Lindstrom died; that within proper time thereafter the plaintiff furnished due proof of such death to the defendant, which failed and refused to pay the sum specified.

The answer denies the material averments of the complaint, and for a further defense alleges that Lindstrom's application for insurance became a part of the policy which was issued; that in such request he represented that all answers made to the medical examiner were full, true, and complete; that Lindstrom signed the report of the medical examination, which was made

a part of the application, and thereby warranted that the answers which he made to the medical examiner had been read by him; that they were true, full, and complete and should form the basis for the contract of insurance; that he fraudulently represented he had not within five years employed or consulted a physician for any ailment and falsely stated he had not been treated for or afflicted with any renal or urinary disease; that he had within such period employed a physician who gave him an unfavorable opinion in respect to his health as an insurance risk; that at the time of the making of such application Lindstrom was suffering from kidney and vesical diseases, particularly describing them. For a second affirmative defense it is averred generally that notwithstanding liability under the contract has at all times been and now is denied by the defendant, in order to avoid annoyance and expense, it effected a compromise settlement with the plaintiff June 22, 1914, whereby there was paid to and accepted by her as such beneficiary, in full satisfaction of all claims and demands under the policy, $100, which sum she retains with full knowledge of all the facts set forth herein, thereby authorizing the defendant to annul the contract of insurance.

The averments of new matter in the answer were denied in the reply, which alleged in effect that Oscar F. Lindstrom correctly answered all questions asked him by the medical examiner giving a full, complete, and truthful statement of his health and physical condition; that the answers so made were written by the medical examiner; that if the answers set forth in the application are in any respect false they were so inserted in the application by the defendant's duly authorized agent after the full and exact truth had been communicated to him by Oscar F. Lindstrom, and

became a fraud and deceit on the part of the medical examiner; that Lindstrom signed the application for insurance without fraud or attempt to deceive the defendant and without collusion on his part with the medical examiner. For a further reply it is alleged generally that the pretended release was obtained from the plaintiff by the fraud of the defendant; that she was induced to sign the release by reason of false, fraudulent, and unlawful representations made by defendant to her to defraud and deceive her; that defendant represented to the plaintiff that the policy of insurance was void because of false representations which had been made by Oscar F. Lindstrom as to his condition of health, thereby causing the policy to be invalid; that the plaintiff relied upon such false and fraudulent representations and was induced thereby to sign the pretended release and to accept the sum stated under a misapprehension of law and fact as to her rights in the premises; that thereafter she elected to rescind and hereby consents that there be deducted from any judgment rendered in her favor against the defendant the sum of $100 so paid to her.

The defendant's counsel moved the court to require the plaintiff to make the reply more definite and certain by stating whether Lindstrom's answers to the medical examiner's questions were true or false, to specify what particular acts of fraud and deceit were practiced upon Lindstrom by the medical examiner to obtain his signature to the application, and to detail what false and fraudulent representations were made by the defendant to the plaintiff with respect to the declarations uttered by Oscar F. Lindstrom to the medical examiner as to the condition of his health. This motion was denied and an exception saved. A demurrer to the reply was thereupon inter-

posed on the ground that it did not state facts sufficient to constitute such a pleading. The demurrer was overruled, and the cause having been tried resulted in a verdict and judgment for $900 in favor of the plaintiff, from which the defendant appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. A. H. McCurtain, Mr. Samuel R. Stern* and *Messrs. Bauer & Greene,* with oral arguments by *Mr. McCurtain* and *Mr. Stern.*

For respondent there was a brief with oral arguments by *Mr. Omar C. Spencer* and *Mr. Alfred A. Hampson.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. The demurrer alone will be considered. In order clearly to understand that part of the reply the sufficiency of which is thus challenged, attention will be called to cases cited by plaintiff's counsel holding in effect that if a person in applying for a policy of life insurance makes truthful statements as to his health and physical condition to a medical examiner who without the knowledge of the applicant fraudulently changes the answers to questions on that subject so as to make it appear the insured is a safe risk, the insurance company so represented by the physician is liable on a policy issued in consequence of the deceit of its agent. Thus in *Mutual Reserve Fund Life Assn.* v. *Cotter,* 81 Ark. 205 (99 S. W. 67), a headnote reads:

"Where an applicant for life insurance correctly answered the questions propounded to him by the insurance company's medical examiner, but without his knowledge the examiner wrote down incorrect answers,

the insurance company is estopped to take advantage of the wrong of its own agent.''

In *Lyon* v. *United Moderns,* 148 Cal. 470 (83 Pac. 804, 113 Am. St. Rep. 291, 7 Ann. Cas. 672, 4 L. R. A. (N. S.) 247), it was ruled that the trial court properly allowed the plaintiff to prove that the insured made a true statement to the medical examiner that he had the ''grippe'' and a slight attack of pleurisy; and where there was no pretense that he had actual knowledge of the contents of the report, but was merely asked to sign the statement at the end thereof, the court properly instructed the jury that if he had had the disease of pleurisy and answered ''No,'' it would be a misrepresentation of a material fact which would avoid the policy, but that if he told the true facts to the medical examiner, and he neglected or omitted to write the answer in his report, the insured was not responsible for such omission or neglect unless he had actual knowledge that the answer had been imperfectly or incorrectly written.   So, too, in *Pfiester* v. *Missouri State Life Ins. Co.,* 85 Kan. 97 (116 Pac. 245), it was decided that an applicant for insurance, without knowledge to the contrary, may assume that the agent has prepared the application according to agreement, that the company has written the policy according to the application, and that he is not negligent in failing to examine such instruments for errors and omissions.

2. The part of the reply which refers to the answers alleged by the defendant to have been falsely made by the insured to questions propounded at his medical examination is as follows:

''That if said answers contained in said application * * are in any respect false or untrue they were inserted in said application by the duly authorized medi-

cal examiner and agent of defendant only after the full and exact truth had been communicated to him by the said Oscar F. Lindstrom and because of fraud and deceit on the part of said medical examiner; that the said Oscar F. Lindstrom signed the written application without fraud or attempt or intent to deceive the defendant and without collusion on his part with defendant's medical examiner."

It will thus be seen that the alterations, if any, in the answers to the medical examiner's questions are not alleged to have been made without the knowledge of the insured. Webster's New International Dictionary defines the word "collusion" used in the reply as follows: "A secret agreement and co-operation for a fraudulent or deceitful purpose; a playing into each other's hands; deceit; fraud." It is possible, therefore, that Oscar F. Lindstrom may have had full knowledge of the medical examiner's alleged scheme to defraud his principal without co-operating in any manner in such agent's deceit. The rules of practice adopted by the Circuit Court of the State of Oregon for Multnomah County, where this cause was tried, require a party who attacks an adversary's pleading by motion or demurrer also to give a written notice stating the specific question to be considered. Complying with this precept the defendant's counsel served upon the opposite party a writing which *inter alia* states:

"You are hereby notified that in arguing the foregoing demurrer we will contend that after the defendant has set forth certain questions and answers claimed to have been made by the assured to the insurance company that the plaintiff must either affirm or deny the truth of the allegation contained in said answer, and that it is not sufficient reply to plead in the alternative."

It will thus be seen that the particular question now under consideration and the alleged want of knowledge of the insured in respect to his answers as noted by the medical examiner were neither presented to nor considered by the trial court.

3. The testimony in relation to this branch of the case shows that Oscar F. Lindstrom lived upon a farm near Vernonia, Oregon; that on April 10, 1913, W. W. Lindsey, an insurance solicitor, and Dr. J. H. Flynn, a medical examiner, visited the farm house in that vicinity of Elon Malmstein, where Mr. Lindstrom was then working; that upon solicitation for insurance Mr. Lindstrom went to Mr. Malmstein's house to be examined by the physician; that Mrs. Malmstein was sitting in an adjoining room between which and the room then occupied by her visitors a door stood ajar; that she could not help overhearing the conversation; that Mr. Lindstrom told the doctor he would not take any insurance unless he successfully passed the examination, saying he had not been well, but was then feeling better, detailing all his supposed ailments, and seemingly magnifying his infirmities.   In speaking of Dr. Flynn this witness stated upon oath:

"He asked a few questions, not so very many; he asked him (Mr. Lindstrom) if his parents were living, how old they were, and a few other questions * * but I cannot exactly say the ones that were asked.   Then he went on and said that is all the questions you need answer now, I will fill out the rest, and fix it all right."

Mrs. Malmstein further testified:

"Doctor Flynn examined him, and told him he had only a little bladder trouble, and he said he would give him a bottle of medicine that would cure him in a little while, and he repeated this two or three different times, and he said he was sure that in three weeks' time he would be all right."

This testimony is partially corroborated by that of Mr. Malmstein, who in answer to the question, "Did Doctor Flynn make any statements after he came out (of the house) with Oscar Lindstrom about the medical examination?" replied:

"Doctor Flynn and Mr. Lindstrom talked some about his condition. Doctor Flynn said he could be accepted all right. He said the little trouble you have is not very much, a little bladder trouble, we can get medicine that will cure you in a little while, about three weeks he would be well."

This testimony was emphatically denied by Doctor Flynn, who stated upon oath that in his report of the medical examination he correctly noted Mr. Lindstrom's answers as he gave them. From the sworn statements of Mr. and Mrs. Malmstein the jury might reasonably have inferred that Oscar F. Lindstrom correctly answered every question propounded to him by Doctor Flynn, to whom he carefully detailed all his supposed physical ailments, and that, without his knowledge, the medical examiner changed his answers and supplied others where necessary so as to make it appear that Lindstrom's application was a safe risk.

4. The absence from a written statement of facts constituting a party's cause of action or defense of a material averment will not be supplied by a verdict, but such finding will cure a defective statement in a pleading: *Houghton & Palmer* v. *Beck,* 9 Or. 325; *David* v. *Waters,* 11 Or. 448 (5 Pac. 748); *Weiner* v. *Lee Shing,* 12 Or. 276 (7 Pac. 111); *Bingham* v. *Kern,* 18 Or. 199 (23 Pac. 182); *Kimball Co.* v. *Redfield,* 33 Or. 292 (54 Pac. 216); *Hargett* v. *Beardsley,* 33 Or. 301 (54 Pac. 203); *Foste* v. *Standard Ins. Co.,* 34 Or. 125 (54 Pac. 311); *Hannan* v. *Greenfield,* 36 Or. 97 (58 Pac. 888); *Savage* v. *Savage,* 36 Or. 268 (59 Pac. 461); *Chan Sing*

v. *Portland,* 37 Or. 68 (60 Pac. 718); *Washington etc. Investment Assn.* v. *Stanley,* 38 Or. 319 (63 Pac. 489, 84 Am. St. Rep. 793, 58 L. R. A. 816); *Creecy* v. *Joy,* 40 Or. 28 (66 Pac. 295); *Patterson* v. *Patterson,* 40 Or. 560 (67 Pac. 664); *Philomath* v. *Ingle,* 41 Or. 289 (68 Pac. 803); *Nye* v. *Bill Nye Milling Co.,* 42 Or. 560 (71 Pac. 1043); *Ferguson* v. *Reiger,* 43 Or. 505 (73 Pac. 1040); *Madden* v. *Welch,* 48 Or. 199 (86 Pac. 2); *Johnson* v. *Sheridan Lumber Co.,* 51 Or. 35 (93 Pac. 70); *Hillman* v. *Young,* 64 Or. 73 (127 Pac. 793, 129 Pac. 124).

In *Booth* v. *Moody,* 30 Or. 222, 225 (46 Pac. 884), Mr. Justice BEAN in discussing this subject observes:

"The extent and principle of the rule of aider by verdict is that whenever the complaint contains terms sufficiently general to comprehend a matter so essential and necessary to be proved that, had it not been given in evidence, the jury could not have found the verdict, the want of a statement of such matter ·in ex press terms will be cured by the verdict, because evidence of the fact would be the same whether the allegation of the complaint is complete or imperfect. But if a material allegation going to the gist of the action is wholly omitted, it cannot be presumed that any evidence in reference to it was offered or allowed on the trial, and hence the pleading is not aided by the verdict."

5. The bill of exceptions herein contains as a part thereof the entire testimony, and for that reason it is unnecessary to invoke from the verdict a presumption that evidence was received tending to show that, without his knowledge, incorrect answers were noted by the medical examiner upon Mr. Lindstrom's application for insurance. If the defect in the reply wherein the phrase "without collusion" was improperly used for the expression "without knowledge" had been par-

ticularly called to the attention of the trial court, an amendment of the pleading would probably have been allowed; but as the averment referred to was not wholly omitted and testimony in relation thereto was received, the verdict cured such imperfection.

6, 7. Another part of the written notice, served with the demurrer, is to the effect that the allegations of fraud in the reply in respect to the representations imputed to the defendant's agent, whereby the plaintiff's execution of the release is asserted to have been induced, are not set forth with sufficient certainty. The part of the final pleading thus assailed reads:

"That plaintiff was induced to sign said release by reason of false, fraudulent, and unlawful representations made by defendant to her with intent to defraud and deceive her; that defendant represented to the plaintiff that said policy of insurance was void and of no effect because of alleged and pretended false representations which defendant stated to plaintiff had been made to defendant by said Oscar F. Lindstrom as to his condition of health and which thereby caused said policy of insurance to be invalid and not binding upon defendant; that plaintiff relied on said false and fraudulent representations and was induced thereby to sign the pretended release in said answer referred to and to accept a nominal sum therefor under a misapprehension both of law and of fact as to her rights in the premises induced by said false and fraudulent representations so relied upon by her."

It is argued by defendant's counsel that the part of the reply last quoted fails to allege: (1) Whether the representations so imputed to the defendant's agent were made with knowledge of their falsity; (2) that the statements were uttered by him with intent to defraud; and (3) that such narration was relied upon by the plaintiff. In *Bailey* v. *Frazier,* 62 Or. 142, 148 (124

Pac. 643), Mr. Justice BURNETT, discussing this subject, observes:

"It has often been laid down as a rule for pleading fraud in this state that the representations must have been false; that the defendant making them knew they were false; that they were made with the intent to defraud; and that the party seeking to be relieved from the fraud must have relied upon such representations."

In addition to the cases cited as supporting the legal principle thus recognized see also: *McFarland* v. *Carlsbad etc. Sanatorium Co.,* 68 Or. 530 (137 Pac. 209, Ann. Cas. 1915C, 555); *Cobb* v. *Peters,* 68 Or. 14 (136 Pac. 656); *Outcault Advertising Co.* v. *Buell,* 71 Or. 52 (141 Pac. 1020); *Corby* v. *Hull,* 72 Or. 429 (143 Pac. 639); *Ingram* v. *Carlton Lumber Co.,* 77 Or. 633 (152 Pac. 256); *Hyde* v. *Kirkpatrick,* 78 Or. 466 (153 Pac. 41, 153 Pac. 488).

In *Schoellhamer* v. *Rometsch,* 26 Or. 394 (38 Pac. 344), it was ruled that an intent to deceive was not such an essential ingredient of a charge of fraud as to render the complaint omitting that allegation vulnerable to attack after a general demurrer to the initiatory pleading had been overruled. In *McFarland* v. *Carlsbad etc. Sanatorium Co.,* 68 Or. 530 (137 Pac. 209, Ann. Cas. 1915C, 555), it was held that a pleading charging fraud should allege that the representations were false and either known by the person making them to be false, or were made by him recklessly as of his own knowledge without knowing whether or not they were true.

In *Colorado Springs Co.* v. *Wight,* 44 Colo. 179 (96 Pac. 820, 16 Ann. Cas. 644, 647), it was decided that a charge of fraud in a pleading which did not either expressly or impliedly allege that the defendant knew the representations to be false or that he intended them

to be acted upon was demurrable for failure to state a cause of action.   In the notes of that case it is said:

"Any allegation which necessarily implies knowledge is sufficient.   If the term 'fraudulently' is used in the declaration, complaint, or petition, an allegation that the defendant knew the falsity of the representations may be dispensed with. * * As a matter of pleading, *'fraudulenter* without *sciens,* or *sciens* without *fraudulenter'* is sufficient."

An examination of that part of the reply last hereinbefore quoted will disclose that while the adjective "fraudulent" is used to qualify the name "representations" as there first employed, the adverb "fraudulently" is not used to limit or modify the verb "represented," nor is it charged either that the defendant knew the representations to be false, or that they were made recklessly without knowing whether or not they were true, nor is it averred that the representations were made with intent to deceive.   These omissions show that the part of the pleading referred to does not state facts sufficient to constitute a reply; and hence an error was committed in overruling the demurrer interposed on that ground.   Other errors are assigned, but believing they will not be repeated the judgment is reversed and a new trial ordered.

                          REVERSED AND REMANDED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE MCCAMANT concur.